STATE of Wisconsin, Plaintiff-Respondent,

v.

Walter SONNENBERG, Defendant-Appellant-Petitioner.

Supreme Court

*No. 82–1081–CR. Argued November 2, 1983.—
Decided February 28, 1984.*

(Also reported in 344 N.W.2d 95.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Kenneth L. Lund,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Stephen W. Kleinmaier,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, C.J.   This is a review of a court of appeals *per curiam* order dated February 15, 1983, which affirmed the defendant's conviction on September 4, 1981, in the circuit court for Brown county, Charles E. Kuehn, Circuit Judge, of the violation of sec. 940.225 (2) (e), Stats., second-degree sexual assault.

The defendant petitioned this court for review, which was granted May 3, 1983.

We conclude that the trial court erred when it permitted the state to contradict the defendant's direct-testimony statement—that he never had need to seek sexual satis-

faction from any woman other than his wife—by producing a female witness who testified that, a few days before trial, defendant Sonnenberg had asked her to go to bed with him and offered to "make a deal" with her if she would do so. We hold that such testimony was inadmissible because it was evidence of "other conduct" which only tended to contradict Sonnenberg and was not admissible for any recognized purpose. The testimony violated the generalized rule of evidence recently reaffirmed by this court in *McClelland v. State,* 84 Wis. 2d 145, 267 N.W.2d 843 (1978), that it is error to introduce extrinsic rebuttal evidence on a collateral matter in an effort to impeach the testimony of a witness. We conclude, however, that the statement, though error, was not prejudicial. The error was not "plain," but harmless. We affirm.

On July 10, 1981, the defendant, Walter Sonnenberg, was charged with second-degree sexual assault in violation of sec. 940.225 (2) (e), Stats., sexual contact with a person over twelve and under eighteen years of age, his fourteen-year-old niece, T. L., on or about July 5 or 6, 1980.

During the jury trial, the niece testified that she and her half-sister, both of whom were in a foster home, until the weekend of June 12, 1981, spent weekends during the summer and school year with the defendant, her uncle, and his wife. The niece testified that the defendant touched her breast and pubic area on the weekend of July 4, 1980, and that he touched her during every visit thereafter until June 12, 1981. She did not tell her aunt or anyone else about these incidents until she told her social worker in June of 1981.

The defendant denied all his niece's allegations and claimed that she made up the story to get even with him after they had had a disagreement. The defendant testified at trial. On direct examination the defendant stated that he had been happily married for twenty-one years

and had no problems with his sexual relationship with his wife. The defendant stated that, during the course of his marriage, he did not go to any other female for his sexual needs.

On cross-examination the prosecutor asked the defendant whether he knew a Cathy Herman and whether it was not true that, about ten days before trial, he had propositioned her to go to bed with him in exchange for drugs. The defendant admitted that he knew Cathy Herman but denied that he propositioned her to go to bed with him in exchange for drugs. No immediate objection was made by defense counsel. After similar questions by the prosecutor, defense counsel asked to approach the bench and objected. The district attorney responded, asserting that Sonnenberg opened the door to the cross-examination about sexual contact, because he stated that he never sought sexual satisfaction from women other than his wife. Defense counsel objected that the question about Cathy Herman, made without any factual foundation, was highly prejudicial and inflammatory. He stated that, unless there was shown to be a basis in fact, he objected to the questioning. The prosecutor stated that he would only ask questions for which he could establish a foundation by rebuttal testimony. The trial judge ruled that the defendant had opened the door to sexually related questions and permitted the cross-examination to continue. In response to further cross-examination, Sonnenberg denied he had sexual contact or intercourse with either of his nieces.

After the defense rested, the state called Cathy Herman as a rebuttal witness. Herman testified that she was twenty-five years old and had been convicted of crimes twice in the past. Herman testified that, about a week and a half before the trial, Sonnenberg asked her to have sex with him. Defense counsel interposed two objections to this line of questioning: One, that the answer called for hearsay; and, two, that the answer called for a conclusion

on the part of the witness. These objections were overruled. Herman testified that Sonnenberg said he wanted to have sex with her because "he likes sex a lot and that he needed to relieve some tension because he was depressed because he was going to Court and he just said he likes sex a lot."

On September 29, 1981, after the jury found Sonnenberg guilty of second-degree sexual assault, he was sentenced to an indeterminate term of not more than thirty months imprisonment. On March 19, 1982, he filed a post-conviction motion asking for a new trial. Sonnenberg for the first time asserted that the testimony of Cathy Herman constituted improper impeachment, in violation of sec. 906.08(2), Stats.,[1] and the general rule against impeachment on collateral matters by extrinsic evidence. The defendant, relying on *McClelland v. State*, 84 Wis. 2d 145, 267 N.W.2d 843 (1978), further contended that the admission of extrinsic evidence on a collateral matter was prejudicial error requiring that the conviction be set aside and a new trial granted. The state contended that testimony on rebuttal was proper impeachment and was admissible under sec. 904.04(2)[2] as

[1] "906.08   **Evidence of character and conduct of witness.**

"(2) SPECIFIC INSTANCES OF CONDUCT. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crimes as provided in s. 906.09, may not be proved by extrinsic evidence. They may, however, subject to s. 972.11(2), if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to his or her character for truthfulness or untruthfulness.

[2] "904.04   **Character evidence not admissible to prove conduct; exceptions; other crimes.** (1) CHARACTER EVIDENCE GENERALLY. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

". . .

"(2) OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes

*"Whitty"* evidence to show motive, opportunity, and intent. *Whitty v. State,* 34 Wis. 2d 278, 149 N.W.2d 557 (1967), *cert. den.,* 390 U.S. 959 (1968). The postconviction motion was denied by the trial court.

On June 4, 1982, the defendant filed an appeal challenging the original judgment of conviction and the order denying the postconviction motion. By a summary order dated February 15, 1983, the court of appeals affirmed the judgment and order of the trial court. The court of appeals concluded that *McClelland* was distinguishable, because the court in *McClelland* found the admission of extrinsic-evidence testimony on a collateral matter on rebuttal to be plain error which, under the facts of that case, caused great prejudice to the defendant. The court of appeals stated that the circumstances surrounding the charged offense and the Herman incident were dissimilar and the collateral extrinsic evidence was remote in time (hence, not highly probative). Furthermore, the court said, the collateral-occurrence testimony was not in itself highly prejudicial or likely to cause a jury to want to punish the defendant or to unduly focus on the collateral matter. It was held that the defendant was not "entitled to relief on appeal because he has not established a plain error affecting a substantial right . . . ."

This court granted the defendant's petition to review the order of the court of appeals.

The above facts furnish the underpinning for Sonnenberg's argument that he is entitled to a new trial. The argument is that the testimony of Cathy Herman was prejudicial error, because she testified as a rebuttal wit-

wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

ness in respect to a specific incident involving Sonnenberg when that incident was completely collateral and was introduced only for the purpose of attacking the defendant's credibility. Because it is claimed the evidence was highly prejudicial, he asserts it should be treated as plain error although no contemporaneous objection was made.

The defendant argues that the admission of the Herman testimony violates sec. 906.08 (2), Stats.:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crimes . . . may not be proved by extrinsic evidence."

The same rule of evidence permits a limited inquiry into the credibility of the witness, but only by crossexamination.

It is also alleged that the introduction of the Cathy Herman testimony is violative of sec. 904.04 (2), Stats., which states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

The defendant also argues that Cathy Herman's evidence is entirely collateral to the proceedings, because it would not have been admissible on its own but is only intended to discredit prior testimony of the defendant. The defendant points out that it violates the generalized rule recently restated in *McClelland v. State, supra,* which prohibits, on public policy grounds, the impeachment of a witness by extrinsic evidence on a collateral matter.

The rejoinder to this argument by the state is that the defendant is not entitled to relief, because the Herman testimony was properly admissible because it came within the exceptions to the proposition of sec. 904.04 (2) (character evidence not admissible), which does not exclude evidence "when offered for other purposes, such as

proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The state also argues that the recent holding in *McClelland* should be modified to permit impeachment by extrinsic evidence, even on a collateral matter, where the purpose is to attack the credibility of an accused in a criminal matter when the accused has introduced a statement during the course of direct testimony.

Finally, in respect to none of the alleged errors, the state points out, was an appropriate objection made contemporaneously during trial. The state relies upon sec. 901.03 (1) (a), Stats., which provides that error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and the party has entered a timely objection stating the specific ground on which the claim of error is based. The state asserts that none of the objections asserted during the course of trial were appropriate, nor of a kind that would have apprised the trial judge of the exact objection to the evidence.

We note at the outset of our decision that the question asked on cross-examination in respect to whether the defendant knew a Cathy Herman and whether he had propositioned her was substantially unobjectionable. While that inquiry on cross-examination was in respect to a specific conduct of a witness other than for the conviction of a crime, it was for the purpose of eliciting a reply probative of the truthfulness or untruthfulness of Sonnenberg's statement that he never had need to seek sexual satisfaction from anyone other than his spouse. Cross-examination in this respect is not prohibited by the rules (sec. 906.08 (2), *supra*). While the alleged incident with Cathy Herman occurred over a year after the last alleged sexual assault upon T. L., no objection was made on the basis of the incident being remote in time from the

crime charged. Putting aside the question of remoteness, which, of course, affects relevance, the rules specifically permit a cross-examination question of this type. Nevertheless, such a question is always subject to the objection that the prejudicial effect outweighs the possible probativeness in the particular case.[3] That objection, however, was never raised; and in view of the specific approval given by sec. 906.08 (2) to cross-examination in respect to conduct, if the conduct inquired about is probative of truthfulness or untruthfulness, we are satisfied that the question on cross-examination did not constitute error.

The serious problem raised is as the result of the state's calling Cathy Herman for the purpose of discrediting Sonnenberg's answer, elicited on the cross-examination, that he had not propositioned Cathy Herman a few days prior to trial. Herman testified that she was twenty-five years of age and had been convicted of two crimes. She testified that Sonnenberg, shortly before trial, asked her to have sex with him. The objections posed to these questions by defense counsel were that the answers were hearsay and that the answers called for a conclusion on the part of the witness. Needless to say, although the testimony was objectionable and the questions were prohibited by the rules of evidence, the objections posed missed the mark and they were properly overruled by the trial judge. No objection was made to Herman's testimony on the ground that it constituted extrinsic evidence on a collateral matter and, therefore, was not admissible under *McClelland.* Nor, apparently, was there any request that the testimony be stricken or that any instruction or admonition be given the jury limiting the effect of Herman's testimony. It was not until the hearing on the postconviction motion that it was asserted that Herman's testimony constituted extrinsic evidence on a collateral

---

[3] See sec. 904.03, Stats. *Cf., Model Code of Evidence,* Rule 303, Discretion of Judge to Exclude Admissible Evidence.

matter and was inadmissible pursuant to both sec. 906.08 (2) and the generalized rule enunciated by this court in *McClelland*.

Thus, it is the duty of this court to determine whether the testimony of Cathy Herman is error under the circumstances and, if so, whether it was plain error in that it was so prejudicial that it affected a substantial right to a degree warranting a reversal even though no contemporaneous objection was made as required by sec. 901.03 (1) (a).[4] That Herman's testimony was extrinsic evidence is beyond doubt. Wigmore, 3A *Evidence*, sec. 878, p. 647 (Chadbourn rev. 1970), characterizes extrinsic evidence as testimony obtained by calling additional witnesses, as opposed to evidence obtained by the cross-examination of a witness. A similar characterization of extrinsic evidence appears in the statement of T. Warshafsky, *Trial Handbook for Wisconsin Lawyers*, sec. 315, p. 500 (1981): "[E]vidence admitted other than through examination of the witness whose impeachment is sought." The evidence of Cathy Herman was extrinsic evidence under either of these definitions, and such characterization is not disputed by the state.

The second question, however, is in respect to whether the extrinsic evidence pertains to a matter collateral to that before the court. Whether the evidence is collateral is disputed by the state. In *State v. Spraggin*, 71 Wis. 2d 604, 623, 239 N.W.2d 297 (1976), this court, relying upon Wigmore, 3A *Evidence*, sec. 1003, p. 961, stated:

---

[4] The court of appeals was correct when it refused to blindly follow the urging of the defendant that, because the admission of extrinsic evidence on a collateral matter was found to be plain error in *McClelland*, a similar breach of the rules of evidence constituted plain error in the present case. Whether an error is prejudicial or harmless—or whether it should be considered plain error—is dependent upon the circumstances and facts of each case. Whether a particular error is prejudicial or harmless in one case is not a precedent for so holding in another case.

"Wigmore suggests that a matter is collateral if it does not meet the following test:

" 'Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?' *Wigmore, supra,* at sec. 1003."

The state, however, asserts that the statement of Cathy Herman is not collateral and is not prohibited by sec. 906.08(2), Stats., or the generalized rule of *McClelland.* The state contends that Cathy Herman's testimony had a purpose other than merely to attack the credibility of Sonnenberg's testimony that he never sought sexual gratification other than with his spouse. The state argues that Herman's testimony was independently admissible under sec. 904.04(2) as evidence not merely of bad conduct, but as relevant evidence, which, under the exceptions to that section, may be offered for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Thus, the state contends the evidence of Sonnenberg's conduct as recounted by Herman is separately admissible for a purpose not collateral and, accordingly, is not subject to the *McClelland* rule or the limitations of sec. 906.08(2).

It bases separate admissibility on the assertion that the testimony was probative of the defendant's intent, motive, or plan for satisfying his sexual desires. The court of appeals discounted this argument by pointing out that, "the circumstances surrounding the two incidents were dissimilar and remote in time." The court of appeals took the position that the incident recounted by Cathy Herman was so different from the crime charged and so remote in time as to be almost irrelevant to Sonnenberg's case. It concluded that, quite aside from whether the admission of Herman's testimony violated *McClelland,* the defendant could not have been prejudiced.

Certainly, the incidents were remote in time. The offense charged in respect to T. L. occurred in July of 1980. The incident in which the defendant allegedly propositioned Cathy Herman occurred over a year later, just a few days before trial.

Sec. 906.08 (2), Stats., permits cross-examination in respect to specific instances of conduct if such conduct is not "remote in time." Thus, under the remoteness test, upon proper objection, even the cross-examination of Sonnenberg in respect to the Cathy Herman incident, in the exercise of judicial discretion, could have been barred from admission.

Common sense dictates that, whatever the intent Sonnenberg displayed at the time of his proposition to Herman, the incident was not relevant to whatever intent he might have had in respect to the charged crime over a year earlier. It would appear that the chronology alone would dispel any relevancy of the Cathy Herman testimony. Moreover, the incidents were dissimilar.

The points of similarity urged by the state are that both Herman and T. L. knew the defendant prior to the incidents, and that in neither case was there evidence of force. In each case the women were offered payment or gifts. Each was much younger than the defendant, and each of the women asked the defendant why he was interested in her, to which he responded, the state asserts, with similar statements that he enjoyed sexual relations with younger women.

To argue that these incidents are similar is inexplicable. True, both women knew the defendant. However, T. L. knew the defendant as a niece and, apparently, for her lifetime. Herman had known the defendant for only a matter of a few weeks. The second similarity, that there was no evidence of force in either incident, is true; but, of course, that similarity would arise in almost any incident in respect to anyone, and the charge is not that

of a forcible assault. The fact is that the record fails to show that there was sexual contact of any sort between Herman and the defendant. Nor does the evidence indicate that the defendant offered payment or a gift in exchange for sexual favors.

T. L. testified that she did not know why the defendant gave her things. Contrariwise, the record shows that there was an uncle and niece relationship between the two. There is nothing in the record to show that gifts were given only after the first time that Sonnenberg allegedly sexually molested T. L.

It is strained indeed to conclude that the incidents were similar because both of the women were younger than the defendant. Herman was a twenty-five-year-old adult female with an admitted multiple criminal record, while T. L. was a child of fourteen years. The facts of record totally fail to support the state's allegation that "the defendant sought to have sexual relationships with younger women other than his wife in order to satisfy his sexual needs."

The most the two incidents show is that, assuming sexual contact took place—and there is no contention of any contact between Herman and the defendant—both Herman and T. L. were younger than Sonnenberg. The evidence, moreover, does not show that the defendant said in each instance that he preferred to have sex with younger women. What the state does is to pose the imperfect analogy of a solicitation of an adult with a criminal record and the molestation of a minor. That analogy is not apparent. The remoteness in time alone would be sufficient to make the Herman incident irrelevant to the alleged incident with T. L. Even were the incident not so separated in time, the evidence is not relevant. Sec. 904.-01, Stats., states:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of conse-

quence to the determination of the action more probable or less probable than it would be without the evidence."

There is little in the Cathy Herman incident, the alleged solicitation of an adult, that is of any consequence to the determination of whether it is more or less probable that the defendant committed a sexual assault upon a child over a year before.

In addition, the defendant's intent, motive, or plan is not an issue in the present litigation. The defense is simply that it did not happen. The question of whether or not an admitted touching was or was not for the purpose of sexual gratification is not an issue in the case. The commentary to sec. 904.04(2), Stats., points out that:

"Evidence of other crimes, wrongs or acts which tend to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, is not automatically admissible. It should be excluded if the motive, opportunity, intent, etc., is not substantially disputed or if under all the circumstances the danger of undue prejudice substantially outweighs the probative value under s. 904.03." 59 Wis. 2d R79.

In this particular case, those elements are not in dispute.

To recapitulate, relevancy of evidence regarding other conduct depends upon its nearness in time, place, and circumstances to the alleged crime and upon the elements which are in dispute and are sought to be proved. *State v. Hall,* 103 Wis. 2d 125, 307 N.W.2d 289 (1981).

Cathy Herman testified about an alleged event which occurred between two adults fourteen months after the alleged molestation of T. L. The incident between these two adults would appear to approximate the crime of solicitation and not the crime of sexual contact with a child between the ages of twelve and eighteen. There is no substance to the argument that the propositioning of a twen-

ty-five-year-old woman with a criminal record is relevant to intent, motive, or plan to have sexual contact with a child. It would appear to be a dangerous analogy to conclude that, because a person sought to buy sexual favors from a twenty-five-year-old woman that there is, therefore, a greater likelihood that that person had the intent, motive, or plan of assaulting a fourteen-year-old child. The extrinsic testimony of Cathy Herman in respect to a collateral fact is not relevant to the proof of any of the elements in the instant case. Its only purpose, and the only thing it could have proved, was the lack of credibility of the defendant's assertion on direct examination; and, as has been demonstrated above, this type of attack by extrinsic evidence is not permitted.

The state appears to concede that the admission of this extrinsic evidence to show the defendant's intent to have sexual contact with a fourteen-year-old goes beyond the ordinary limits of the rules of evidence. The state would avoid the usual rules by arguing, quoting from *Hendrickson v. State,* 61 Wis. 2d 275, 279, 212 N.W.2d 481 (1973) :

"A 'greater latitude of proof as to other like occurrences' is clearly evident in Wisconsin cases dealing with sex crimes, particularly those involving incest and indecent liberties with a minor child."

Whatever may be the correctness of that statement in respect to the circumstances of the cases in which it has heretofore appeared (*Day v. State,* 92 Wis. 2d 392, 284 N.W.2d 666 (1979) ; *Hendrickson v. State,* 61 Wis. 2d 275, 212 N.W.2d 481 (1973) ; *State v. Tarrell,* 74 Wis. 2d 647, 247 N.W.2d 696 (1976)), the statement is not appropriate in the circumstances of the present case. In each of the three cases, greater latitude of proof was indeed permitted when this court held that the evidence objected to by the defendant was not barred by sec. 904.04(2), Stats.; but, in each of those three cases, the defendant was charged with taking indecent liberties with a child,

and the evidence objected to involved "other like occurrences," taking indecent liberties with a child. But that is not the situation in the present case.

The state does not seek to show intent, motive, or plan by showing the defendant's conduct in other similar instances of child molestation. Instead, it seeks to support its claim of child molestation with evidence of the alleged propositioning of a twenty-five-year-old adult woman, with whom it is not even asserted there was sexual contact. Even under the cases which give greater latitude to the state to bring in evidence of the same type of sexual conduct to prove intent, motive, or plan, there is no intimation that dissimilar types of conduct have any relevance.

The record makes clear that Cathy Herman's testimony that the defendant propositioned her about ten days before trial was not admissible as *"Whitty"* evidence and, therefore, was introduced only for the purpose of showing contradiction and to attack the defendant's credibility. As such, the evidence was not admissible under the prohibitions of sec. 906.08 (2), Stats., except on cross-examination and then only if not remote in time or if not unduly prejudicial.

Because of the remoteness of time between the alleged molestation of T. L. and the conduct of Cathy Herman, the right to bring out the Herman incident, even on cross-examination, is suspect.

What is abundantly clear, however, is the fact that in *McClelland, supra,* we recently stated that it was the law of Wisconsin that the impeachment of a witness on the basis of collateral facts introduced by extrinsic evidence is prohibited. As pointed out elsewhere in this opinion, Herman's testimony was extrinsic. The exceptions to the rules excluding other-crimes evidence were not applicable. Herman's testimony was collateral and inadmissible.

We conclude that the admission of Cathy Herman's testimony was error. It falls directly under the prohibition of *McClelland v. State, supra,* and we need not reiterate here the policy reasons for our holding that the impeachment of a witness on the basis of collateral facts introduced by extrinsic evidence is forbidden. The policy grounds for doing so were set forth in *State v. Spraggin,* 71 Wis. 2d 604, 622–23, 239 N.W.2d 297 (1976), and quoted in *McClelland v. State,* 84 Wis. 2d 145, 160–61, 267 N.W.2d 843 (1978).[5]

In this case, as in *McClelland,* no proper objection was made. Nothing was brought to the attention of the trial judge to show that the principles of *Spraggin* and *McClelland* were implicated. No appropriate objection was

[5] "The general rationale of the rule that prohibits extrinsic contradiction of collateral facts for impeachment purposes is set forth in *State v. Spraggin,* 71 Wis. 2d 604, 622, 239 N.W.2d 297 (1976). The court stated:

" 'A rule has evolved that prohibits contradiction, more commonly generalized as impeachment, of fact testimony that is collateral to the issues of the particular case. McCormick, *Evidence,* at p. 98, sec. 217 (2d ed. 1972); 3A Wigmore, *Evidence,* secs. 1001, 1002 (Chadbourn, rev. 1970). Cross-examination on such matters is to be limited, and it has been said that the examiner must abide by the answers to his questions on immaterial subjects. 4 Jones, *Evidence,* sec. 25.8 (6th ed. 1972). *See: Greene v. Agnew* (1915), 160 Wis. 224, 227, 151 N.W. 268. The imprecision of conclusions that can be drawn from a contradiction on immaterial matters, when obviously only the impeaching effect is involved, is the logical basis for the bar. Auxiliary policy reasons include distraction and confusion of unprobative issues for the trier of fact, the prejudice and surprise to the proponents of the contradicted witness when his testimony on collateral matters is challenged, *Wigmore, supra,* and perhaps even the unwarranted impression created of the contradicted witness who may be able but unprepared to explain or refute the contradiction of immaterial facts. These reasons are of course not applicable when the testimony is on a material issue, so much depends on the determination of what is "collateral." ' "

made, and the defendant is not entitled to a review as a matter of right.[6] There must be a review and a reversal of conviction if "plain" error was committed.

To recapitulate then, *McClelland* is controlling, its rationale—and the rationale of *Spraggin,* upon which it is in part based—accurately portrays the public-policy reasons for not admitting into evidence extrinsic evidence on a collateral matter. Basically, these concerns revolve about the confusion of issues, waste of time, and focusing of the jury's attention on trivial matters. The reasons set forth in those cases for barring this type of evidence control here. The trial court, therefore, erred when it admitted Herman's testimony into evidence, because that evidence in respect to the alleged incident was appropriate only for the purpose of contradiction. It was admissible only in the course of proper questions on cross-examination, the answers to which the cross-examiner would be obliged to "take" without the right to produce additional impeaching evidence on the collateral issue.

Because the defense failed to make a proper objection to Herman's testimony, sec. 901.03(1)(a), Stats., precludes review as a matter of right. The rule of sec. 901.03 (1)(a) is, however, subject to the exception which appears in sec. 901.03(4):

"PLAIN ERROR. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge."

The doctrine of plain error was discussed in *Virgil v. State,* 84 Wis. 2d 166, 267 N.W.2d 852 (1978), relying upon 3 Wright, *Federal Practice and Procedure,* sec. 851

---

[6] We can in any case, irrespective of any objection, in our discretion elect to review an alleged error in respect to the admission of evidence. *Ollinger v. Grall,* 80 Wis. 2d 213, 258 N.W.2d 693 (1977).

(1969). We stated in *Virgil,* at 191, that plain error is " 'error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time.' " Relying on the same authority, we stated that plain error means " 'error both obvious and substantial' " or " 'grave error.' " We also quoted with approval the statement by Wright that, " 'plain error' is a concept appellate courts find impossible to define, save that they know it when they see it.' " In *Virgil,* at 192, we concluded that error was plain because the defendant's conviction was obtained through a violation of the defendant's confrontation rights under both the United States and the Wisconsin Constitutions. We said:

"This violation of the defendant's constitutional rights is so serious, viewed in the context of the other evidence properly admitted in this case, that we conclude that the admission of the evidence constitutes plain error, requiring a reversal of the conviction."

Chief Justice Beilfuss, concurring with the majority opinion in *Virgil,* pointed out, at 195, that the plain error exception to the contemporaneous objection rule "should be used sparingly and only in cases such as this, where a basic constitutional right has not been extended to the accused."

In *McClelland, supra,* extrinsic evidence on a collateral matter was admitted without appropriate contemporaneous objection. The basic charge there was armed robbery. The collateral evidence erroneously admitted by extrinsic testimony was that, at a time shortly after the alleged crime, the defendant at gunpoint forced his way into a house. We concluded that the admission of this evidence, clearly error, was highly prejudicial because it tended to prove more than the contradiction of an extraneous and collateral fact. We stated, at 162:

"It tended to show that the defendant was a violent person who would seek self-help at the point of a gun to rectify a real or fancied wrong. The tenor of the record

suggests that the introduction of this collateral evidence prevented the jury's focus upon the real issue of the case: Was McClelland guilty of the armed robbery of the farmhouse. . . . Such evidence on its face, without any cautionary instruction, substantially affected the defendant's right to a fair trial."

Thus, in *McClelland,* we concluded that the evidence admitted was so prejudicial and was so likely to confuse the jury that the defendant's due-process right of having notice in respect to what was being charged and, hence, his right of fair trial, was denied. *McClelland* conformed to the admonitions of the concurring opinion of Chief Justice Beilfuss in *Virgil*—that the plain-error doctrine should be reserved for cases where there is the likelihood that the erroneous introduction of evidence has denied a defendant a basic constitutional right.

In the instant case, we do not see the denial, at least under the facts of this case, of any fundamental constitutional right or a substantial impairment of the right of fair trial. The court of appeals put its finger on why the error was harmless when it pointed out that the two incidents were so dissimilar that it could hardly be said that the erroneously admitted testimony in respect to Herman was prejudicial to the defendant. It pointed out the remoteness in time between the two incidents. In short, the court of appeals concluded that the testimony of Cathy Herman was not highly prejudicial, likely to cause a jury to want to punish the defendant, or to cause the jury to focus unduly on a collateral matter. For all practical purposes, it held that the Cathy Herman testimony was irrelevant and inconsequential to the proof of defendant's guilt in respect to the alleged sexual assault on T. L.

The usual objection to other-crimes evidence or other-conduct evidence, *e.g.,* the testimony which was banned in *McClelland,* is because the evidence is too relevant. The *McClelland* evidence was relevant to the degree that it

showed McClelland was a bad man and would resort to the use of a gun for trivial purposes. This obscured the focus which was intended to be brought upon the crime charged. There was the likelihood that the jury in *McClelland* would convict the defendant for bad conduct other than that charged. The alleged conduct of Sonnenberg in respect to Cathy Herman is, however, simply irrelevant. Although the admission of Cathy Herman's testimony was clearly erroneous, it requires a considerable stretch of the imagination to conclude that it was prejudicial. In the context of the record and the crime charged, the Cathy Herman incident was trivial.

In *Wold v. State,* 57 Wis. 2d 344, 356–57, 204 N.W.2d 482 (1973), this court stated that:

"The test of harmless error is not whether some harm has resulted, but, rather, whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt. *See Harrington v. California* (1969), 395 U.S. 250, 89 Sup. Ct. 1726, 23 L. Ed. 2d 284. This test is based on reasonable probabilities. Although the court in *Fahy v. Connecticut* (1963), 375 U.S. 85, 84 Sup. Ct. 229, 11 L. Ed. 2d 171, had talked about reasonable possibilities, *Harrington* shows the court no longer in fact uses that standard. A possibility test is the next thing to automatic reversal. In determining guilt 'beyond a reasonable doubt,' the human mind should not work on possibilities, but on reasonable probabilities."

We have concluded, in applying the *Wold* test, that errors committed at trial should not overturn the conviction unless it appears that the result might probably have been more favorable to the party complaining had the error not occurred. Even had there been an objection, an erroneous ruling in the instant case would not necessarily have mandated a reversal, for it is necessary, under the rules of evidence, Sec. 901.03 (1) (a), that a substantial

right of the defendant be affected. While the right to a speedy, uncluttered trial, to some degree, was affected in the instant case and the focus of the jury might have been somewhat diffused, the jury's attention was diverted to almost totally irrelevant evidence and not to too relevant evidence, as in the case of *McClelland*.

We conclude that in the instant case there was sufficient evidence independent of and uninfluenced by Cathy Herman's testimony to have permitted the jury to reach the conclusion that the defendant was guilty beyond a reasonable doubt. The jury was presented with the direct testimony of T. L. She stated that, on numerous occasions and particularly on the date charged, the defendant touched her breasts and her pubic area. An examination of the record shows that she told her story in a straightforward way and in a manner which the jury could believe. Her evidence, if believed, as it clearly was, was sufficient to support the conviction beyond a reasonable doubt. She gave a reasonable explanation why she did not report her uncle's advances at an earlier date—she did not wish to hurt her aunt, her assailant's wife.

The defendant denied ever having had any sexual contact with T. L. He attempted to explain the various gifts which he gave to T. L. as being consistent with his avuncular relationship. He produced numerous witnesses who testified to his reputation for truth and veracity. There were witnesses, including the defendant's wife, who stated that T. L. did not have a good reputation for truth and veracity.

The record shows that the issue of truthfulness was put before the jury in such a manner that the credibility of T. L. and of Sonnenberg were in direct opposition. The jury elected to give credence to the testimony of the child. Such evidence, believed by the jury, was sufficient to support a guilty verdict.

The record shows that, in its final charge, the court cautioned the jury that the other conduct involving the defendant for which he was not on trial, *i.e.*, the alleged episode with Cathy Herman, was not to be considered by the jury to conclude that the defendant had certain character traits and that he acted in conformity with those traits. The court specifically said:

"If you find that the Defendant did such act [an act not charged], you must not conclude that it is proof that he committed the offense with which he is charged now."

While the court did not specifically refer to the Cathy Herman testimony in its admonition to the jury, it was made clear to the jury that it was only to consider the evidence of July 5 or 6, 1980, in determining whether the offense charged had been proved beyond a reasonable doubt. It was instructed not to consider any testimony in respect to the relationship between the accused and T. L. at other times, nor evidence in respect to any other incident—which would, of course, have included the episode, irrelevant and remote in time as it was, with Cathy Herman. There was sufficient evidence other than, and uninfluenced by, the inadmissible testimony of Cathy Herman that was sufficient beyond a reasonable doubt to convict the defendant of second degree sexual assault. Accordingly, although we hold that the admission of the testimony of Cathy Herman was error in that it explicitly violated the rule stated in *McClelland* and the implicit rule of sec. 906.08(2), Stats., which allows only cross-examination, the error was harmless. The court of appeals correctly sustained the conviction. We affirm its order.

*By the Court.*—Order affirmed.

WILLIAM G. CALLOW, J. (concurring). I concur with the result of the majority opinion affirming the con-

viction in this case, but I would affirm the conviction on different grounds. The majority concludes that admission of Cathy Herman's testimony was error, but that it was harmless error. I believe that admission of Herman's testimony was not error, and I would affirm the conviction on that basis.

The majority concludes that admission of Herman's testimony was error because *McClelland v. State,* 84 Wis. 2d 145, 267 N.W.2d 843 (1978), prohibits impeachment of a witness by extrinsic evidence of collateral facts. The majority argues that this rule prevents confusion of issues, waste of time, and focus of attention on trivial matters. Generally, these concerns are valid and ought to prevent impeachment of a witness by extrinsic evidence on a collateral matter. However, when a criminal defendant testifies on direct examination that he or she has never committed any acts similar to the offense charged, these concerns are less valid. In such a case the defendant's credibility is a central issue. Therefore, in the discretion of the trial court, extrinsic evidence ought to be admissible to contradict the defendant's testimony.

Justice Connor T. Hansen's analysis of this issue in his dissenting opinion in *McClelland,* 84 Wis. 2d at 162–65 (in which I joined), applies to this case. Admission of Herman's testimony to contradict the defendant's statement that he never sought sex from anyone other than his wife did not confuse the issues, waste time, or focus attention on a trivial matter. The crime charged was not factually connected to the testimony of Herman. The two incidents occurred fourteen months apart. Therefore, admission of this testimony would not confuse the issues, waste time, or focus attention on a trivial matter because it focused attention on a critical matter—the defendant's credibility. Here, the defendant testified on direct examination that he never sexually assaulted his niece and that he had never sought sex from anyone other than his wife.

His credibility was crucial to a finding of guilt or innocence.

In his dissenting opinion in *McClelland,* Justice Hansen also pointed out that admission of the extrinsic testimony did not unfairly surprise or prejudice the defendant. Here, as in *McClelland,* the defendant was not unfairly surprised by the admission of Herman's testimony. The defendant himself raised the issue by stating on direct examination that he had never sought sex from anyone other than his wife. Herman's testimony was probative of the defendant's veracity in making that declaration. Therefore, her testimony was properly admitted.

Section 906.08, Stats., was not intended to exclude evidence under these circumstances. The policies behind sec. 906.08 are not implicated when a defendant testifies, as in this case. The search for truth requires that the jury hear competent evidence relevant to the defendant's credibility.

In this case the defendant on direct examination stated that he never sought sex from anyone other than his wife. Under *McClelland* and section 906.08, Stats., the defendant was properly asked on cross-examination whether he had sought sex from Herman. The defendant denied ever seeking sex from Herman. Under *McClelland* the prosecutor was bound by that answer and was without recourse to show that the answer was false. This should not be so. If the prosecutor is bound by the defendant's answer on cross-examination, the jury is denied evidence which is relevant to the defendant's credibility, and the defendant has a "shield against contradiction of his untruths." *Walder v. United States,* 347 U.S. 62, 65 (1954). Because the defendant's credibility is an important issue when he testifies that he did not commit an offense, evidence of his credibility is important to a determination of the truth. Therefore, extrinsic evidence ought to be allowed, even on a collateral issue, when the defendant de-

nies engaging in any activity similar to the offense charged.

The Second Circuit Court of Appeals in *United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978), allowed extrinsic evidence to contradict the defendant's testimony on a collateral issue. In *Benedetto* the defendant was charged with receiving money in connection with official duties as a government meat inspector. *Id.* at 1247. He testified on direct examination that he did not receive money in connection with his duties from the government's witnesses or *anyone else*. *Id.* at 1248 (emphasis added). On cross-examination the defendant denied receiving money from Herman Lustgarten. Lustgarten testified in rebuttal that he periodically gave money to the defendant. *Id.* at 1248.

The court in *Benedetto* stated: "Once a witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement, even if such statement concerns a collateral matter in the case." *Id.* at 1250. The court found the evidence to be admissible under Fed. R. Evid. 607 (the federal counterpart to sec. 906.07, Stats.) and upheld the conviction. *Id.* at 1251.

A similar analysis should apply in this case. Here, the defendant testified on direct examination that he did not commit the sexual assault and that he never sought sex from anyone other than his wife. He testified on cross-examination that he never sought sex from Herman. Herman's rebuttal testimony here is similar to Lustgarten's testimony in *Benedetto*. Therefore, the trial court in this case should have the same discretion to admit Herman's testimony as did the trial judge in *Benedetto*.

I agree with the court in *Benedetto* and joined the dissent in *McClelland* which declares that extrinsic evidence may be admitted, in the discretion of the trial court, to

contradict the testimony of a defendant as it relates to credibility. For the reasons stated in this concurrence, I believe that sec. 906.08, Stats., was not intended to preclude admission of this evidence.

I am authorized to state that JUSTICE DONALD W. STEINMETZ and JUSTICE LOUIS J. CECI join in this concurring opinion.

STEINMETZ, J. (concurring). I join Justice Callow's concurring opinion. Further, I would state that if the district attorney asks a question of the defendant regarding sexual infidelity, which as in this case was whether the defendant asked Cathy Herman for sexual activity, and the district attorney is bound by his negative answer, then the defendant's attorney would necessarily ask that the district attorney's question be stricken from the record and the jury instructed to disregard it. Standing by itself, the question and its content are without foundation and merely suggest prejudicial information. Even if the trial court would overrule the lack of foundation objection, the question would suggest to the jury that it would hear more on the subject. When it hears no more on the subject, it is impossible to predict whether that would redound to the prejudice of the defendant or the state. The defendant raised the subject of his sexual proclivity on direct examination and it was irrelevant at that time. Since it was heard and became evidence to be considered by the jury, the attack on its believability should be allowed.

There is an issue of the nearness in time of Cathy Herman's information to another event. The question is what event is the witness's information to be related to in time. As I analyze it, the information is not related to the offense, since it is irrelevant to whether that event occurred. Rather, it is related in time to the defendant's statement on direct examination; it is relevant to his

credibility and is close in time to that event. Such an analysis is eminently fair to the defendant, since he raised the subject of his sexual fidelity to his wife and is best aware of his philanderings or attempts at it, if any have taken place. If there have been other recent transgressions or attempts at sexual infidelity close in time to his testimony, he would be well-advised not to try to impress the jury with his alleged fidelity which could be questioned.

If the district attorney were not allowed to follow up his question with available information, an overzealous district attorney could ask a question inferentially loaded with prejudicial ideas and not be presently prepared to offer proof. The trial court would almost by necessity be required to hold an offer of proof hearing to make sure that the district attorney had follow-up evidence to the question in order to avoid an ethics problem and then not allow the jury to hear the information.

I concur with the majority; however, I would find the foundation testimony of Cathy Herman permissible under sec. 906.08, Stats., since the defendant volunteered the subject on direct examination. He caused the subject to become relevant to his credibility, if not to the charged act of the offense.