# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 16, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP509-CR**

Cir. Ct. No. 2021CF265

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

KERRY C. JENKINS,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Walworth County: PHILLIP A. KOSS, Judge. *Affirmed.*

Before Neubauer, Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kerry C. Jenkins appeals from a judgment of conviction for two counts of first-degree sexual assault of a child under thirteen and one count of incest, all based on sexual contact with his then-four-year-old granddaughter. He also appeals from an order denying postconviction relief. Jenkins contends trial counsel was ineffective in failing to introduce evidence regarding the victim's alternate source of knowledge and failing to ensure unanimity on two counts of the verdict. He further argues the circuit court erroneously exercised its discretion in ruling that the State could inquire into specific instances of Jenkins's dishonest conduct on cross-examination if Jenkins chose to testify. Finally, Jenkins argues that the State presented insufficient evidence at trial to support the jury's verdicts. We disagree and affirm.

## BACKGROUND

¶2 As relevant to this appeal, on February 6, 2020, then-four-year-old Hailey[1] told her mother that Jenkins had climbed into her bed, rubbed her "butt," and let Hailey "kiss his wiener." During a forensic interview on March 4, 2020, Hailey said "she did not want to talk anymore" because when she talked about it, "it made her mother cry." Six months later, on September 19, 2020, Hailey was napping at Jenkins' house while her parents were running an errand, and Hailey later told her mother that Jenkins had touched her "privates over her underwear."

¶3 During a second forensic interview on October 6, 2020, Hailey described that Jenkins does "naughty" things, "takes off her underwear," and "rubs her 'front butt,'" which she described as where she goes "pee." Hailey also said

---

[1] We use a pseudonym to protect the victim's right to privacy.

2

that Jenkins "makes her rub his wiener," which "makes her feel sad," and when she "rubbed [Jenkins'] wiener with her hand," some "'white stuff' that is not 'pee' comes out of [his] wiener," and "goes into a paper towel."

¶4 During a two-day jury trial, the State presented testimony from law enforcement officers, Hailey's mother, Jenkins' wife, the forensic interviewer who twice discussed the allegations with Hailey at the child advocacy center (CAC), and Hailey herself. During the presentation of the defense case, Jenkins indicated that he wanted to testify in his own defense. Outside the presence of the jury, the State advised the court that it planned to ask about his prior conviction for obstruction under WIS. STAT. § 906.09(1) (2023-24),[2] as well as the specifics of that conviction—lying about stealing from his employer—and evidence of two incidents of theft allegations and lying about it under WIS. STAT. § 906.08(2) as "specific instances" of conduct "for the purpose of attacking … his character for truthfulness." The circuit court determined § 906.09 did not preclude the use of § 906.08(2). The court ruled that only conduct that showed untruthfulness or dishonesty would be admissible, and it ruled the State would be allowed to question Jenkins on conduct from his prior conviction that involved crimes of theft and other incidents where Jenkins stole others' property.

¶5 In light of the ruling that the State could cross-examine Jenkins regarding specific instances of dishonest conduct, Jenkins informed the court that he no longer wished to testify. Although Jenkins chose not to testify, defense counsel called Jenkins' son Jacob (who is Hailey's father), Jenkins' daughter Heather, and his son-in-law Nicholas to testify at trial on Jenkins' behalf.

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

¶6     Jacob testified that Hailey has never told him that Jenkins touched her inappropriately. Jacob also admitted to having a "crude personality" and stated he often tells "naughty jokes" around his kids, including frequently discussing the family dog "[l]icking his wiener" and making "sexual jokes" in front of them. Testimony from Jenkins' wife, Hailey's mother, Heather, and Nicholas all corroborated the inappropriate and crude nature of Hailey's father, and all confirmed that Jacob frequently joked about sexual matters in front of his kids. This testimony furthered the defense strategy of pointing to specific things Hailey had heard and seen at home as the source of her sexual knowledge, arguing to the jury that she was confused and did not understand the seriousness of her allegations against Jenkins because sexual matters were considered funny in her household.

¶7     The jury convicted Jenkins of two counts of first-degree sexual assault of his four-year-old granddaughter and one count of incest. As to the two sexual assault convictions, the verdict forms specify that the first conviction was for the incident involving "Defendant Touching Victim's 'Front Butt' and the second for the 'Touching of Defendant's Penis by Victim's Hand.'" Jenkins faced imprisonment of up to 105 years of initial confinement and 55 years of extended supervision. The circuit court imposed a total of 13 years of initial confinement and 13 years of extended supervision for the two sexual assault convictions, and 3 years of confinement followed by 3 years of supervision on the incest conviction, to run concurrent with the other sentences.

¶8     Jenkins filed a motion for postconviction relief. Jenkins argued he is entitled to a new trial, alleging that his trial counsel was ineffective for failing to sufficiently investigate, and for not calling his daughter, Breanna as a witness to testify about Hailey's knowledge of sexual functioning stemming from observing

4

her dog and hearing her father's jokes and for not ensuring that the verdicts on the two counts of sexual assault, each involving different criminal conduct, were unanimous. Jenkins also asserted that a new trial is warranted because the circuit court erroneously ruled that if Jenkins testified, his dishonest conduct of lying about stealing from his employer related to his past conviction for obstruction, as well as other specific untruthful conduct, was admissible. Finally, Jenkins sought dismissal of all charges, claiming that there was insufficient evidence to establish he sexually assaulted his granddaughter during the charging period. After a *Machner*[3] hearing at which trial counsel, Heather, Breanna, and Nicholas testified, the court denied the motion. Jenkins appeals.

## DISCUSSION

*Ineffective Assistance of Counsel*

¶9     Jenkins first argues that a new trial is warranted because trial counsel was ineffective on two fronts. He specifically takes issue with counsel's failure to investigate alternate sources of sexual functioning and failure to call Breanna to testify at trial as to alternate sources for Hailey's knowledge of sexual functioning. He also argues that trial counsel rendered ineffective assistance in failing to ensure unanimity from the jury as to which specific incidents of sexual assault Jenkins was convicted.

¶10     To prevail on an ineffective-assistance-of-counsel claim, Jenkins must show that trial counsel performed deficiently and that he was prejudiced by the deficiency. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also*

---

[3] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

*State v. Mayo*, 2007 WI 78, ¶33, 301 Wis. 2d 642, 734 N.W.2d 115. "The test for deficient performance is whether counsel's representation fell below objective standards of reasonableness." *State v. McMahon*, 186 Wis. 2d 68, 80, 519 N.W.2d 621 (Ct. App. 1994). The test for prejudice is whether "our confidence in the outcome is doubted such that the conviction is fundamentally unfair or unreliable." *Id.* We will uphold the circuit court's findings of fact unless they are clearly erroneous, but review de novo whether counsel's performance was deficient and prejudicial. *Mayo*, 301 Wis. 2d 642, ¶32. This court presumes counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

¶11 Bearing these standards in mind, we reject Jenkins' ineffective assistance of counsel arguments. He failed to show that counsel performed deficiently. At the *Machner* hearing, trial counsel testified as to his decisions not to call Breanna or elicit evidence at trial regarding the dog ejaculating, and his alleged failure to ensure unanimity as to the conduct forming the basis for the sexual assault convictions. Counsel explained why he decided not to call Breanna as a witness: Breanna had sent him numerous emails about her "different theories about why this was made up" or "who might be influencing" Hailey, and counsel was concerned that he would have to turn over these emails to the State if she testified. Relatedly, counsel believed that Breanna's credibility may have been questioned because, out of all the family members, she was the most supportive of Jenkins and the State could have shown "that she was biased." Counsel testified that other family members had not corroborated that Hailey had seen the dog ejaculate, and counsel did not want "to impeach" Jacob with Breanna's testimony that "would have shown inconsistency" with Jacob's testimony, that he did not remember that the "dog ejaculated in front of [Hailey]."

6

¶12 The postconviction court found that trial counsel's testimony about his trial strategy and investigation of Hailey's sources of knowledge of human sexuality was "credible." The court determined that counsel credibly testified about his "strategic decision not to call Breanna" to testify that Hailey saw their dog ejaculating, which was "reasonable" because of his concerns that he would have to turn over her statements in support of Jenkins to the State, and that the State could have "attacked" Breanna as biased. The court also found credible counsel's testimony that other family members had not corroborated that Hailey had seen the dog ejaculate, and counsel did not want to impeach Hailey's father with inconsistencies. The court determined that trial counsel had "met his duty of investigation" related to this issue and made a reasonable, strategic decision not to call Breanna at trial. The court therefore concluded that Jenkins failed to establish deficient performance by trial counsel in this regard.

¶13 *Strickland* clearly states that we are to review the strategic reasons for counsel's conduct. *Id.*, 466 U.S. at 691. We are to do so from counsel's perspective at the time of the conduct and apply the objective standard of reasonably effective, not perfect, assistance. *See State v. Felton*, 110 Wis. 2d 485, 502–03, 329 N.W.2d 161 (1983); *see also State v. Thiel*, 2003 WI 111, ¶59, 264 Wis. 2d 571, 665 N.W.2d 305. As noted above, we will uphold the circuit court's findings of fact unless they are clearly erroneous. *See Mayo*, 301 Wis. 2d 642, ¶32. Applying the proper standard of review here, we accept the circuit court's credibility determinations, and we uphold the court's finding that trial counsel had strategic reasons for its challenged decisions. The court's findings are not clearly erroneous.

¶14 Strategic trial decisions, when rational, do not constitute deficient performance. *State v. Breitzman*, 2017 WI 100, ¶¶38, 75, 378 Wis. 2d 431, 904

N.W.2d 93. An experienced attorney's decision to not call a witness or solicit testimony for which he did not have sufficient proof and which would impeach his star witness, is a reasonable strategic choice that does not constitute deficient performance. *See id.*, ¶75 ("Reviewing courts should be highly deferential to counsel's strategic decisions and make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" (Omission in original; citation omitted)).

¶15     Jenkins next argues that trial counsel was ineffective in that he should have objected based on unanimity because it was unclear "what specific conduct" formed the factual basis for each sexual assault count and whether the jurors agreed on the date or the specific act for each count. Based on our review of the Record, we disagree. The charging documents, jury instructions, the State's closing argument, and the verdict forms specifically described the conduct that formed the factual basis for each of the two sexual-assault-of-a-child counts. There was no merit to an objection based on unanimity and therefore, he has not shown that trial counsel was ineffective for not making such an objection.

¶16     The right to a jury trial implies the right to a unanimous verdict on the ultimate issue of guilt or innocence. *State v. Johnson*, 2001 WI 52, ¶11, 243 Wis. 2d 365, 627 N.W.2d 455. The unanimity requirement ensures that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense. *Id.* In this case, there is no issue of jury unanimity because the information alleged, and the jury was specifically instructed, on what sexual contact formed the factual basis for each offense: count one related to Jenkins' touching Hailey's "front butt" on or about and between

February 6, 2020 and October 6, 2020; and count two related to Hailey touching Jenkins' penis on or about and between February 6, 2020 and October 6, 2020.

¶17    In its closing argument, the State described the specific conduct forming the basis for each count of sexual assault of Hailey. After it returned the guilty verdicts, the jury was individually polled to confirm that each member was convinced of Jenkins' guilt of the charges beyond a reasonable doubt. Jenkins has failed to establish that counsel performed deficiently as to the issue of jury unanimity.

¶18    Ultimately, Jenkins failed to demonstrate that counsel's performance was deficient in any regard. Therefore, we reject Jenkins' claim of ineffective assistance of counsel.

*Admission of Specific Instances of Untruthful Conduct*

¶19    Jenkins next argues that the circuit court erred by ruling that the State would be allowed to cross-examine him about the underlying conduct of his prior conviction. This court "will not disturb the circuit court's decision to admit evidence unless the court erroneously exercised its discretion." ***State v. Ringer***, 2010 WI 69, ¶24, 326 Wis. 2d 351, 785 N.W.2d 448.

¶20    Jenkins asserts that had the specific instances of conduct not been admissible, the State could still have impeached him with his prior conviction and testimony from Jenkins' wife about her "opinion as to his truthfulness," but its ruling allowing cross-examination on the specifics of the conduct was an erroneous exercise of discretion because the conduct was "remote in time." In support, he relies on ***State v. Sonnenberg***, 117 Wis. 2d 159, 170, 344 N.W.2d 95 (1984), where the circuit court found that an incident twelve months after the

charged conduct was too remote in time to be admitted under WIS. STAT. § 906.08(2). However, this case is distinguishable from the isolated incident in *Sonnenberg*, where the defendant's propositioning an adult woman a year after the charge of sexual contact with a minor was too "dissimilar" and remote in time to be relevant to whatever intent he might have had in respect to the charged crime with a minor over a year earlier. *Sonnenberg*, 117 Wis. 2d 159, 170. Here, the specific untruthful conduct was neither remote nor isolated: it occurred before the charges in this case, between 2011 and 2019, establishing a pattern of untruthful behavior over an extended period of time. Thus, unlike the single, specific incident in *Sonnenberg*, Jenkins' conduct showed a pattern of untruthful behavior over nine years. Jenkins fails to persuade us that the court's admission of this evidence for impeachment on cross-examination was an erroneous exercise of its discretion that entitles him to a new trial.

¶21 Jenkins also argues that the circuit court's reliance on WIS. STAT. § 906.09 is misplaced because it does not have a "remote in time" component. We are not convinced. Evidence may be admissible under different theories, and nothing in either WIS. STAT. § 906.08(2) or § 906.09 suggests the statutes are mutually exclusive. Rather, § 906.08(2) allows for introduction of specific instances of untruthful conduct "on cross-examination of a witness" when used "for the purpose of attacking or supporting the witness's character for truthfulness" if the conduct is "probative of truthfulness or untruthfulness and not remote in time." Sec. 906.08(2).

¶22 Here, we agree with the State that Jenkins' character trait for truthfulness was at issue at trial. There was no physical evidence presented. The sole issue for the jury was dependent on witness credibility, meaning that had Jenkins exercised his right to testify, his history of untruthfulness was clearly

relevant. We conclude the circuit court appropriately ruled the State could cross-examine Jenkins about specific instances of conduct that reflected on his character for truthfulness, satisfying requirements of WIS. STAT. § 906.08(2). Accordingly, the court did not err by allowing the State to inquire on cross-examination about the underlying facts of Jenkins' prior conviction and other specific instances of untruthful conduct.

*Sufficiency of the Evidence*

¶23 We now address Jenkins' assertion that the charges against him should be dismissed because the verdicts were not supported by sufficient evidence. We view the evidence in the light most favorable to the verdict, and if more than one inference can be drawn from the evidence, we must accept the one drawn by the jury. *See **State v. Poellinger***, 153 Wis. 2d 493, 504, 451 N.W.2d 752 (1990). The verdicts "will be overturned only if, viewing the evidence most favorably to the state and the conviction, it is inherently or patently incredible, or so lacking in probative value that no jury could have found guilt beyond a reasonable doubt." ***State v. Alles***, 106 Wis. 2d 368, 376–77, 316 N.W.2d 378 (1982) (citation omitted).

¶24 The jury is the sole arbiter of witness credibility and it alone is charged with the weighing of the evidence. *See **Poellinger***, 153 Wis. 2d at 506. The jury, as ultimate arbiter of credibility, has the power to accept one portion of a witness' testimony while rejecting another—that is, a jury can find that a witness is partially truthful and partially untruthful. *See **O'Connell v. Schrader***, 145 Wis. 2d 554, 557, 427 N.W.2d 152 (Ct. App. 1988). "This court will only substitute its judgment for that of the trier of fact when the fact finder relied upon evidence that was inherently or patently incredible—that kind of evidence which

11

conflicts with the laws of nature or with fully-established or conceded facts." *State v. Tarantino*, 157 Wis. 2d 199, 218, 458 N.W.2d 582 (Ct. App. 1990).

¶25 The facts in support of Jenkins' conviction have been set forth above, and we need not repeat them here. The evidence was primarily testimonial and the convictions based on Hailey's testimony, both at the trial and through her forensic interviews that were played for the jury, as well as corroborating testimony from Hailey's mother, Jenkins' wife, the CAC interviewer, and law enforcement. Jenkins' counsel tried to shift the blame away from him and convince the jury that Hailey's accusations were the result of her father's crude sense of humor. It is within the province of the jury to weigh witness credibility, and the fact that the jury found Hailey's testimony more credible than that of Jenkins' witnesses does not warrant reversal.

¶26 There was ample evidence presented to support Jenkins' guilt. "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt," this court "may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it." *Poellinger*, 153 Wis. 2d at 507. As noted, the evidence against Jenkins at trial was compelling and the inferences the jury drew from that evidence supported its findings of guilt. The evidence was more than sufficient for a reasonable jury to have found Jenkins guilty on all three charged counts. *See **id.*** Accordingly, we reject his challenge to the sufficiency of the evidence.

## CONCLUSION

¶27 For the foregoing reasons, we are unpersuaded by Jenkins' arguments that a new trial is warranted based on alleged ineffective assistance of

counsel or erroneous circuit court rulings, or that all charges should be dismissed due to insufficient evidence to convict Jenkins. We therefore affirm the judgment of conviction and order denying postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.