UNITED STATES of America, Appellee,

v.

Carl BENEDETTO, Defendant-Appellant.

No. 321, Docket 77–1306.

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1977.

Decided Feb. 24, 1978.

Raymond A. Levites, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, Audrey Strauss, Asst. U. S. Atty., New York City, of counsel), for appellee.

Herman Kaufman, New York City (Litman, Friedman & Kaufman, New York City, Jack T. Litman, New York City, of counsel), for defendant-appellant.

Before FEINBERG, MANSFIELD and TIMBERS, Circuit Judges.

FEINBERG, Circuit Judge:

Carl Benedetto appeals from his conviction, after a jury trial in the United States District Court for the Southern District of New York before Irving Ben Cooper, J., on four counts charging the receipt of money in connection with his official duties as a government meat inspector. 21 U.S.C. § 622. This appeal, like *United States v. Gubelman* also decided today, 2 Cir., 571 F.2d 1252, principally raises issues concerning the admissibility of evidence of criminal acts not charged in the indictment. We conclude that on the facts before us the judgment of conviction should be affirmed.

I

There is no claim that the evidence on the four counts charged was insufficient to go to the jury. From 1968 to 1975, appellant was employed by the United States Department of Agriculture as an inspector of wholesale meat processing plants. His primary responsibility was to enforce standards regarding sanitation and proper identification of meat products so that meat leaving a plant was wholesome and fit for human consumption. Appellant had broad administrative powers and a great deal of discretion in carrying out his duties. In the Government's direct case, officers of the four meat processing plants referred to in the indictment testified that appellant had received money in return for lax enforcement of various government rules. These cash payments varied from $15–25 each week.

In its direct case, the Government also introduced evidence from Arthur Breth that Benedetto had received similar payments from Arthur Breth and Son, which was not mentioned in the indictment. Prior to this testimony, Benedetto's counsel had made clear that he intended to call as witnesses employees of meat packing companies not referred to in the indictment. This evidence was to show that Benedetto had not solicited or accepted any money, and therefore was a person of good character not likely to have taken bribes. Defense counsel later lived up to his word and did

present such testimony from four witnesses, who were employed by four other meat processing companies. In addition, Benedetto testified in his own defense. He suggested that his accusers were retaliating because they resented his vigorous enforcement of government regulations. Benedetto also denied that he had accepted any money from the Government's witnesses or from anyone else.

On cross-examination, the prosecutor asked Benedetto about receiving money from Herman Lustgarten, a fellow employee of one of the defense witnesses. Benedetto denied that he had accepted money from Lustgarten. In the Government's rebuttal case, Lustgarten testified that he had periodically given Benedetto $10 in cash, crumpled up and passed in a handshake.

## II

On appeal, the arguments focus mainly on the testimony of Breth and Lustgarten that appellant had accepted money from them. Appellant claims that this evidence of uncharged crimes should have been excluded and that failure to do so deprived him of a fair trial. The Government responds that, under a long line of cases and under new Federal Rule of Evidence 404(b), the district court did not abuse its discretion in admitting proof of similar criminal acts, because such evidence was relevant to show identity, knowledge, intent and "a general plan or scheme," particularly since the similar acts and the acts charged shared "unusual characteristics."

█ The Government is correct that there is much authority in this circuit favorable to its position, see, e. g., *United States v. Bozza*, 365 F.2d 206, 212–14 (2d Cir. 1966); *United States v. Deaton*, 381 F.2d 114, 117–18 (2d Cir. 1967); and more recent-

ly, *United States v. Corey*, 566 F.2d 429 at p. 431 (2d Cir. 1977); *United States v. Cavallaro*, 553 F.2d 300, 305 (2d Cir. 1977), and that we have almost always held that the trial judge did not commit reversible error in admitting such evidence, but see *United States v. DeCicco*, 435 F.2d 478 (2d Cir. 1970). We have long been committed to the "inclusionary" approach to "other crimes" evidence, that is, that evidence of similar criminal acts is admissible if it "is substantially relevant for some other purpose than to show a probability that [the defendant] committed the crime on trial because he is a man of criminal character," McCormick, Evidence § 190, at 447 (2d ed. 1972). That rule is now codified in Federal Rule of Evidence 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

█ This does not mean, however, that evidence of similar acts is automatically admissible. The Government must do more than demonstrate that the evidence is not offered solely to show that the defendant is a bad person. Stopping the analysis there would ignore the fundamental precept that any evidence must be relevant to some issue in the trial. There is no presumption that evidence of other crimes is relevant to any issue in a criminal trial, although it often will be. See 2 Weinstein's Evidence ¶ 404[08], at 404–41 to –43 (1976). Once the trial judge has decided that the evidence is relevant, under our cases [1] and under Federal Rule of Evidence 403, the judge must still weigh the probative value of the evidence against harmful consequences, principally "unfair prejudice." [2] The danger is

---

**1.** See, e. g., *United States v. Braunig*, 553 F.2d 777, 781 (2d Cir.), cert. denied, 431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 277 (1977); *United States v. Chestnut*, 533 F.2d 40, 49–50 (2d Cir.), cert. denied, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1976).

**2.** Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

that once the jury is told of the defendant's other crimes, the jury will impermissibly infer that he is a bad man likely to have committed the crime for which he is being tried. Moreover, we have emphasized that admission of such strongly prejudicial evidence should normally await the conclusion of the defendant's case, since the court will then be in the best position to balance the probative worth of, and the Government's need for, such testimony against the prejudice to the defendant. See *United States v. Leonard*, 524 F.2d 1076, 1092 (2d Cir. 1975), cert. denied, 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976); cf. *United States v. Robinson*, 560 F.2d 507, 515 (2d Cir. 1977) (en banc) (admission of prejudicial evidence properly "delayed . . . until virtually all of the other proof had been introduced . . . ."); *United States v. Kaufman*, 453 F.2d 306, 311 (2d Cir. 1971) (court pointed out that "Government did not offer the evidence in its main case on an issue not yet pressed by the defendant . . . .").

With these considerations in mind, we turn to the theories offered to justify admission of the testimony of Breth and Lustgarten that Benedetto took money from them. We are not impressed by the Government's argument that this evidence was relevant to Benedetto's knowledge and intent. Defendant did not claim that he took the money from the four companies named in the indictment innocently or mistakenly. He claimed that he did not take the money at all. Knowledge and intent, while technically at issue, were not really in dispute, see *United States v. DeCicco*, supra, 435 F.2d at 483–84. Similarly, we would be hard pressed to hold that Benedetto's alleged similar acts shared "unusual characteristics" with the acts charged, thereby evidencing a unique scheme or pattern. McCormick states that such evidence is admissible:

> To prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. *The device used must be so unusual and distinctive as to be like a signature.* (Footnotes omitted, emphasis added).[3]

We are told there was such a "signature" here because Benedetto used "a similar technique for receiving the cash: the passing of folded bills by way of a handshake." But that method of bribery is about as unique as using glassine envelopes to package heroin. If the evidence were that the money had always been passed to Benedetto in an unusual way, e. g., a requirement that the money be placed in a peculiar place,[4] we would have a different view.

There may be some force to the Government's arguments that the other crimes evidence showed a continuing plan by Benedetto to use his position as a federal meat inspector to get cash payoffs and that the evidence was admissible on the issue of identity. Cf. *United States v. Laurelli*, 293 F.2d 830 (3d Cir. 1961), cert. denied, 368 U.S. 961, 82 S.Ct. 406, 7 L.Ed.2d 391 (1962). Defense counsel perhaps indirectly raised the latter issue by extensive cross-examination of Government witnesses, obviously designed to destroy their credibility by showing that Benedetto was not at the particular plants on the days in question.

The Government also claims that the defense opened the door to the testimony of Lustgarten and Breth by presenting four "character" witnesses, who testified that defendant had not taken bribes at their respective plants. This evidence of specific acts was ostensibly designed to prove that Benedetto was a person of good character, unlikely to have taken the alleged bribes. Thus, the Government says that it would have been "unfair" to bar it from rebutting this testimony with extrinsic evidence of specific bad acts. However, character evidence has long been admissible

3. McCormick, Evidence § 190, at 449 (2d ed. 1972).

4. This was the case with one Government witness, who testified that he left the money in a coffee can each Friday.

only in the form of reputation and not in the form of a recitation of good or bad acts. See *Michelson v. United States,* 335 U.S. 469, 477, 69 S.Ct. 213, 93 L.Ed. 168 (1948); Fed.R.Evid. 405(a).[5] Furthermore, while a character witness may be asked on *cross-examination* about "specific instances of conduct," such acts may not be proved by extrinsic evidence of the sort offered here.[6] That the defense improperly attempted to establish defendant's good character by reference to specific good acts did not justify the prosecution's use of testimony concerning bad acts either in its direct case or in rebuttal. See *United States v. Beno,* 324 F.2d 582 (2d Cir. 1963), aff'd after remand, 333 F.2d 669 (2d Cir.), cert. denied, 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 86 (1964).

 If this were the only record before us, the case would be close. What ultimately tips the scale, after reviewing the particular amalgam of facts in this case, is that Benedetto testified on direct examination that he had never taken bribes from anybody. Once a witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement, even if such statement concerns a collateral matter in the case. See *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); *United States v. Beno,* supra, 324 F.2d at 588.[7] Moreover, here Benedetto's statement was closely intertwined with the central issue of this case, namely whether he had received money in connection with his official duties at certain plants. The admission of contradictory evidence to impeach Benedetto's credibility was thus warranted.

It is true that Breth's testimony came in the Government's case in chief, before Benedetto's testimony opened the door. It would therefore have been better if the Government had delayed Breth's testimony until rebuttal.[8] *Cf. United States v. Leonard,* supra, 524 F.2d at 1092. But we do not regard that as controlling in view of the totality of circumstances here. Finally, we do not believe that the door to impeachment of Benedetto thus opened was closed merely because on cross-examination he persevered in his story and denied taking money from Lustgarten, see *Walder v. United States,* supra, 347 U.S. at 63–64, 74 S.Ct. 354; *United States v. Vivero,* 413 F.2d 971, 972 (2d Cir. 1969), cert. denied, 396 U.S. 1017, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970).[9]

---

**5.** It should be noted that the new Federal Rules of Evidence, also allow character testimony in the form of opinion. Fed.R.Evid. 405 and 608. The general prohibition against direct testimony about specific acts is continued. See id. Furthermore, the exception for testimony about specific acts in Rule 405(b) is inapplicable here, since appellant's character was not "an essential element of [the] charge . . . .." Fed.R. Evid. 405(b). See *United States v. Kahan,* 479 F.2d 290, 293 (2d Cir. 1973), rev'd on other grounds, 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974) (evidence of prior performance of official duty without bribe-taking inadmissible in bribery prosecution).

**6.** See Fed.R.Evid. 405(a). Cf. Fed.R.Evid. 608 (deals with character evidence supporting or attacking credibility of witnesses).

**7.** See also Fed.R.Evid. 607, which provides:
The credibility of a witness may be attacked by any party, including the party calling him. Rule 607 appears to allow the continuation of federal practice in admitting extrinsic evidence to impeach specific errors or falsehoods in a witness' direct testimony, subject to Rule 403

considerations. See 3 Weinstein's Evidence ¶ 607[05] (1976).

**8.** The record indicates that the Government offered to do this, although the offer was apparently based on the misapprehension that the defense's "character" testimony would justify this form of rebuttal.

**9.** On this view, the evidence was admissible for impeachment purposes only and Benedetto would normally have been entitled to a limiting charge on this point, cf., e. g., *United States v. Harris,* 401 U.S. 222, 223, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Walder v. United States,* supra, 347 U.S. at 64, 74 S.Ct. 354. Presumably since the parties focused upon whether the testimony was admissible under the prior similar acts rubric, no such charge was requested by appellant. Considering all of the circumstances of this case, including the closeness of the Rule 404(b) question and the strength of the other evidence against appellant, we find no plain error in the court's failure to so charge. See, e. g., *United States v. Bozza,* supra, 365 F.2d at 214.

We thus find that on this record the challenged evidence was admissible, at least under Rule 607.[10] See *United States v. Nathan*, 476 F.2d 456, 460 (2d Cir.), cert. denied, 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973). Moreover, in the context set forth above, the trial judge did not abuse his broad discretion in also concluding that in light of the considerations set forth in Rule 403,[11] the evidence need not be excluded. See *United States v. Deaton*, supra, 381 F.2d at 118 n.3.

We have considered appellant's other arguments and none require discussion.[12] The judgment of conviction is affirmed.

MANSFIELD, Circuit Judge (concurring):

I concur in the result reached by Judge Feinberg in his carefully-considered opinion, but on slightly different grounds.

The proof introduced at trial against Benedetto with respect to the bribes paid to him by the four different meat processors alleged in the four-count indictment was overwhelming. Officers of all of these concerns testified in detail to their having made payments to numerous federal inspectors, including weekly payments to Benedetto during the periods when he was assigned to inspect their respective establishments. At trial these witnesses were fully cross-examined by Benedetto, who testified in his own behalf. Undoubtedly, he received a full and fair trial.

No evidence with respect to Benedetto's dealings with other meat processing establishments was introduced by the Government until after his counsel, during the Government's direct case, advised the court that he proposed as part of the defense to introduce testimony of others in the meat business who dealt with Benedetto to the effect that they neither gave him nor were asked by him for money. Subsequently he introduced testimony to this effect by four witnesses who worked in meat processing plants.

Had not the defendant first announced and then introduced this proof, I might view the admission of the Government's "prior similar act" proof as error, since no issues existed as to which it might properly have been admitted under F.R.Evid. 404(b) (for instance, motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake). Nor can I agree with the majority that the introduction of this evidence may be disregarded on the ground that it might have been introduced to impeach Benedetto's credibility, since it was not presented, received, or explained to the jury in those terms, and there was therefore no requirement that Benedetto ask for the limiting instruction to which he would have been entitled if such a ground had been advanced.

Nevertheless, once the court (albeit improperly) permitted the defendant to introduce proof that he had not received or solicited bribes from others on other occasions, I believe that it was only fair and reasonable to permit the Government to rebut this evidence by showing that there were other occasions when he did receive bribes from other meat processors. Our decision in *United States v. Beno*, 324 F.2d 582, 588–89 (2d Cir. 1963), which appears on the surface to point the other way, is distinguishable. There, after the court had erroneously admitted evidence of specific acts (instead of community reputation) introduced by the defendant, an Internal Revenue Agent charged with solicitation of a gratuity, to show his good character, the Government introduced by way of rebuttal detailed evidence of prior specific acts by the defendant which had no possible relevance to the conduct at issue, such as arrests for reckless driving and forgery of signatures on a tax return. We properly

---

10. See note 7 supra.

11. See note 2 supra.

12. E. g., the claim that Benedetto was improperly asked on cross-examination whether he ever used cocaine is without merit. Defense counsel stated at trial that he had no objection to the inquiry, defendant answered it in the negative, and the judge properly instructed the jury on the matter.

held that the defendant's opening of the door or waiver did not entitle the Government "to explore without restraint and at great length *any* specific occurrence which might tend to create an abhorrent image of the defendant," 324 F.2d at 588. Here, in contrast, the prior conduct offered by the Government was virtually identical to that charged in the indictment.

Under the circumstances, although evidence of the prior conduct proffered by the defendant should in my view have been excluded, I cannot say that it was error, once the door had been opened by the defendant, to admit the Government's rebuttal proof. But even if this be regarded as error, it was harmless, in view of the overwhelming competent proof against the defendant.