**UNITED STATES of America, Appellee,**

v.

**Robert A. GUBELMAN, Sr.,
Defendant-Appellant.**

**No. 379, Docket 77-1279.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1977.

Decided Feb. 24, 1978.

Lawrence Iason, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, Richard Weinberg, Asst. U. S. Atty., New York City, of counsel), for appellee.

Paul Windels, Jr., New York City (Windels & Marx, New York City, J. Dennis McGrath, New York City, of counsel), for defendant-appellant.

Before FEINBERG, MANSFIELD and TIMBERS, Circuit Judges.

FEINBERG, Circuit Judge:

Robert A. Gubelman, Sr. appeals from his conviction, after a jury trial in the United States District Court for the Southern District of New York before Irving Ben Cooper, J., on two counts of accepting money or other things of value in connection with his official duties as a federal meat inspector in violation of 21 U.S.C. § 622. Like *United States v. Benedetto*, 2 Cir., 571 F.2d 1246, a companion case decided today, this appeal concerns the admissibility of "other crimes" evidence under the new Federal Rules of Evidence.[1] After a careful review of this record, we conclude that the judgment of conviction must be affirmed.

## I

Since appellant does not challenge the sufficiency of the evidence, the basic facts underlying this conviction may be summarized briefly. Appellant was a federal meat inspector for the United States Department of Agriculture from January 1971 until his suspension in December 1976. In this position, appellant had broad powers to enforce the federal sanitary regulations in the various wholesale meat packing plants to which he was assigned. The primary purpose of such inspections was to ensure the wholesome quality and proper branding of the meat leaving these plants for the public market. The thrust of the Government's case against Gubelman was that he had used his official position to regularly extort bribes from the meat packing companies whose plants he inspected.

In the Government's direct case, owners of the two companies referred to in the indictment[2] testified that, during the time

---

1. Specifically, Rules 404(b) and 403.

2. Plaut & Stern, Inc. and Master Purveyors, Inc. A third count was severed before trial and later dismissed.

in which Gubelman was assigned to their plants, he asked for and received regular weekly payments ranging from twenty to fifty dollars. Two officers of other meat packing plants not referred to in the indictment also testified that they too regularly paid appellant from ten to twenty-five dollars per week. Appellant then took the stand[3] and denied having received money from either of the two chief Government witnesses. On cross-examination, appellant denied[4] taking money or anything of value from the four Government witnesses or, for that matter, from any other meat packer. Thereafter, the trial court allowed the Government in its rebuttal case to present evidence of two additional alleged similar criminal acts involving the receipt of cigars and two packages supposedly containing meat products.[5]

## II

The sole issue on this appeal is whether the evidence of the four alleged similar criminal acts was properly admitted by the trial judge. As we have pointed out at greater length in *United States v. Benedetto*, supra. 571 F.2d at 1246, analysis of other crimes evidence falls into two parts: First, is the evidence relevant to some issue at trial other than "to prove the character of a person in order to show that he acted in conformity therewith," as required by

3. The defense also presented three character witnesses.

4. Unlike the appellant in *United States v. Benedetto,* supra, Gubelman did not open the door to impeachment by extrinsic evidence by broadly denying receipt of any money from any meat packer in his *direct* testimony.

5. Evidence of the former was attested to by the meat packer involved, while evidence of the latter, characterized by appellant as the receipt of valueless soup bones, came from a government surveillance agent and the movie he had taken of a meat packing company employee placing two bundles in the back of appellant's car. ·

6. Rule 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be

Fed.R.Evid. 404(b);[6] and second, even if relevant, should the evidence nonetheless be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .," as mandated by Fed.R.Evid. 403?[7]

The Government argues that this evidence was admissible under Rule 404(b) "to prove Gubelman's pattern of conduct and to contradict his defense of mistaken identity."[8] We are not sure that the other crimes evidence is so intertwined with the acts forming the basis of the indictment as to clearly justify its admission under the rubric of common scheme or plan. See *United States v. Murphy,* 480 F.2d 256, 260 (1st Cir.), cert. denied, 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151 (1973); *United States v. Laurelli,* 293 F.2d 830, 832 (3d Cir. 1961), cert. denied, 368 U.S. 961, 82 S.Ct. 406, 7 L.Ed.2d 392 (1962). We need not, however, further scrutinize and decide this close question, since the record shows that appellant sufficiently raised the issue of mistaken identity at trial to justify the admission of bad acts evidence relevant to that issue. See *United States v. Eatherton,* 519 F.2d 603, 611–12 (1st Cir.), cert. denied, 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975); *United States v. Johnson,* 382 F.2d 280, 281 (2d Cir. 1967).

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

7. Rule 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

8. The Government also suggests that the evidence was admissible on the issues of knowledge and intent. These issues were at best only technically in dispute, since appellant's defense was that he took no bribes at all, not that he received money or other things of value unknowingly. See *United States v. DeCicco* 435 F.2d 478, 483–84 (2d Cir. 1970).

Thus, appellant's counsel sharply cross-examined several of the Government witnesses as to their ability to identify Gubelman. Additionally, Gubelman's own testimony at trial is replete with innuendoes that the Government witnesses erred in their identification of appellant as one of the corrupt meat inspectors,[9] either because of his moustache or lack thereof during the time period of the indictment,[10] or because of the discrepancies between the time sheets offered by appellant and those introduced by the Government. That the purpose of these intentional defense tactics was to create a reasonable doubt in the minds of the jurors as to the accuracy of the identification of Gubelman by the Government witnesses is reflected in defense counsel's summation:

> So there is no question in my mind that when they picked him out they were picking out *the wrong guy* . . .. I say to you that there is not one shred of credible evidence to associate *this inspector* . . . with having taken one thing, one thing of value. (Emphasis supplied).

Thus, we find that the question of identity was a real one. The similar acts evidence was relevant to that issue, since it is much less likely that the Government's two main witnesses had picked out "the wrong guy" as the meat inspector receiving bribes in their plants when two other witnesses specifically identified appellant as a meat inspector who had taken similar bribes in other plants during the same general time period.[11] Therefore, such evidence was clearly within the purview of Rule 404(b), see note 6 supra.[12]

9. This case is one of several following an investigation into allegations of corruption among federal meat inspectors.

10. As part of this strategy, the defense introduced into evidence photographs of appellant which pictured him with different styles of facial hair.

11. See *State v. Bock*, 229 Minn. 449, 39 N.W.2d 887 (1949); cf. II Wigmore On Evidence § 304, at 205 (3d ed. 1940) (indicating that evidence that other meat inspectors were accepting bribes during the same time period might be probative on a mistaken identity defense).

We next turn to the question whether the evidence should have been excluded under Rule 403. The other crimes evidence offered in the Government's direct case, which squarely implicated Gubelman as a meat inspector on the "take," was strongly probative on the identification issue. That two other men specifically remembered having paid appellant bribes substantially supported the testimony of the two main Government witnesses, whose ability to identify appellant had been questioned. Moreover, testimony concerning extremely similar acts is not inflammatory in the way that an unrelated violent crime might be. Thus, since it is not clear that the prejudice attending such testimony "substantially outweighed" its considerable probative worth, the district court had discretion under Rule 403 to admit the evidence. See *United States v. Grady*, 544 F.2d 598, 605 (2d Cir. 1976); *United States v. Deaton*, 381 F.2d 114, 117–18 (2d Cir. 1967). However, we would not have faulted the trial judge if he had regarded the "necessity" for the disputed evidence as questionable, and had excluded it as an exercise of what we perceive to be his substantial discretion under Rule 403. See 2 Weinstein's Evidence ¶ 404[10] (1976).

We are more troubled by the evidence presented in the Government's rebuttal case, which indicated that Gubelman had accepted several cigars and two packages whose contents were disputed. Here, the trial court would have better discharged its discretion by excluding such equivocal testimony. Nonetheless, in light of the sub-

12. We do not agree with out dissenting brother that only unique signature crimes are admissible under the rubric of identity. See 2 Weinstein's Evidence ¶ 404[09], at 404–55 to –67 (1976). Nor did we so rule or imply in *United States v. Benedetto*, supra, 571 F.2d at 1246. Indeed, we there held that the other crimes and the crimes charged did not evidence a unique scheme or pattern ("signature") but specifically refrained from deciding whether the other crimes evidence was nonetheless admissible on the issue of identity.

stantial, repeated evidence directly implicating Gubelman in a series of cash bribes, we are unable to say that the trial judge abused his broad discretion under Rule 403, see, e. g., *United States v. Robinson*, 560 F.2d 507, 514 (2d Cir. 1977) (en banc), in apparently finding that the slight prejudice of this testimony did not "substantially" outweigh its limited probative value.[13] See *United States v. Araujo*, 539 F.2d 287, 289–90 (2d Cir. 1976); *United States v. Bozza*, 365 F.2d 206, 213–14 (2d Cir. 1966).

We have considered all of appellant's contentions, and, finding no reversible error, we affirm the judgment of conviction.

MANSFIELD, Circuit Judge (dissenting):

While F.R.Evid. 404(b) prohibits the use of "similar act" evidence to prove a defendant's bad character, i. e., that he has a propensity or disposition to commit the crime alleged, it does permit the introduction of such evidence as proof of the "identity" of the defendant as the perpetrator of the crime charged. However, a mere showing of general similarity between the defendant's prior similar act and the act charged is insufficient to render the evidence admissible to prove identity. There must be some unique and specific characteristic common to both the uncharged act and the alleged criminal conduct, such as a similarity in the *modus operandi*, before the earlier act may be admitted on the issue of identity. See, e. g., *United States v. Cavallino*, 498 F.2d 1200, 1207 (5th Cir. 1974); *United States v. v. McCray*, 140 U.S.App. D.C. 67, 433 F.2d 1173, 1175 (1970); *United States v. Bussey*, 139 U.S.App.D.C. 268, 432 F.2d 1330, 1333 (1970); *Parker v. United States*, 400 F.2d 248, 252 (9th Cir.), *cert. denied*, 393 U.S. 1097, 89 S.Ct. 892, 21 L.Ed.2d 789 (1968). Indeed, as the majority in *United States v. Benedetto*, 571 F.2d 1246 (2d Cir. Feb. 24, 1978), Dkt. No. 77–1306, Slip Opin. 1735 stated:

"Similarly, we would be hard pressed to hold that Benedetto's alleged similar acts shared 'unusual characteristics' with the acts charged, thereby evidencing a unique scheme or pattern. McCormick states that such evidence is admissible:

> To prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. *The device used must be so unusual and distinctive as to be like a signature.* (Footnotes omitted, emphasis added by *Benedetto* opinion).

"We are told there was such a 'signature' here because Benedetto used 'a similar technique for receiving the cash: the passing of folded bills by way of a handshake.' But that method of bribery is about as unique as using glassine envelopes to package heroin. If the evidence were that the money had always been passed to Benedetto in an unusual way, e. g., a requirement that the money be placed in a peculiar place, we would have a different view." (Footnotes omitted).

See also Weinstein's Evidence ¶ 404(09) at 404–61.

The reasoning behind the requirement that there be some showing of uniqueness in the defendant's conduct to render his prior similar acts probative on the issue of identity is readily apparent. Without such a showing, the evidence would "identify" the defendant as the perpetrator of the act charged only because it would provide the basis for an inference that since the defendant had engaged in similar conduct on other occasions he was more likely than not to have committed the act on the occasion alleged in the indictment. But this is precisely the inference prohibited by F.R.Evid.

---

**13.** The Government also contends that appellant waived these grounds of objection by failing to specifically state them to the trial court. However, appellant's counsel did object at various times to the testimony as being overly prejudicial, irrelevant, and lacking sufficient probative worth, although this last objection was framed in terms of the gap in time between the acts referred to in the indictment and the acts testified to as other crimes. In these circumstances, we find that appellant sufficiently objected to the testimony.

404(b), which provides that "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

Applying these principles here, in the absence of proof of some peculiarity or uniqueness about Gubelman's conduct, the fact that he took bribes on other occasions, at other places, from other meat processors, does not serve to *identify* him as the same person who took the bribes alleged in the indictment. All it tends to prove is that he had a propensity for bribe-taking. For this purpose its admission is barred by Rule 404(b) which, if paraphrased, would read as follows: "Evidence of other . . . [bribes] is not admissible to prove [Gubelman's propensity to take bribes] in order to show that he [took bribes at the places charged]."

For these reasons I must respectfully dissent.