**UNITED STATES of America,**
**Appellee,**

v.

**Benjamin EISNER, Defendant–**
**Appellant.**

**Docket No. 02–1304.**

United States Court of Appeals,
Second Circuit.

March 3, 2003.

380

Erika K. Thomas, Assistant United States Attorney, (Celeste L. Koeleveld, Assistant United States Attorney,) for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, for Appellee the United States, of counsel.

Samuel I. Burstyn, Miami, Florida, for Defendant–Appellant Benjamin Eisner.

Present: NEWMAN, KATZMANN, and RAGGI, Circuit Judges.

Summary Order

UPON DUE CONSIDERATION of this appeal from the United States District Court for the Eastern District of New York (Dearie, Raymond J., *J.*), it is hereby

**ORDERED, ADJUDGED AND DE-CREED** that the judgment of the District Court is **AFFIRMED.**

The appellant, Benjamin Eisner, pleaded guilty below to one count of conspiracy to commit tax fraud. The district court determined that Eisner was a "leader or organizer" pursuant to U.S.S.G. § 3B1.1(a), and sentenced him principally to an eighteen-month term of imprisonment. Eisner was also tried and convicted on four counts of bank fraud, for which he received a non-Guidelines sentence of eighteen months imprisonment on each count to run concurrently, to be served concurrently with the tax fraud sentence. Eisner now appeals the district court's imposition of a four-level enhancement under § 3B1.1(a), as well as the sufficiency of the evidence underlying his convictions at trial, and the District Court's decisions to admit certain evidence, and give the jury certain instructions, at the trial. We will affirm, although in part on different grounds than the district court relied upon.

Eisner's appeal, although not entirely clear, appears to argue both that the evidence was insufficient to justify an aiding and abetting charge, and that the charge constructively amended or prejudicially varied the indictment. Both claims are without merit.

We must uphold any " 'guilty verdict on an indictment charging several acts in the conjunctive ... if the evidence is sufficient with respect to any one of the acts charged.' " *Griffin v. United States,* 502 U.S. 46, 56–57, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (quoting *Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 24

L.Ed.2d 610 (1970)). In other words, if a jury's verdict leaves open the possibility that it was based upon a theory with sufficient evidence in the record, the fact that the district court did not remove any theories with insufficient support from the jury's consideration is not reversible error. *See id.* at 60. In determining the sufficiency of the evidence, we must view the evidence " 'in the light most favorable to the government, crediting every inference that the [fact finder] might have drawn in favor of the government.' " *United States v. LaSpina,* 299 F.3d 165, 180 (2d Cir. 2002) (quoting *United States v. Dhinsa,* 243 F.3d 635, 648 (2d Cir.2001)). We affirm if, under that set of assumptions, " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

■ There was more than sufficient evidence upon which the jury could have convicted Eisner as the principal offender.[1] The loan applications were obviously falsified; for example, two applications, although ostensibly for different individuals, listed identical work history, assets, and telephone numbers. A third was very similar, although the listed assets were somewhat different. All, improbably, claimed absolutely no liabilities or outstanding debts. Indeed, Eisner virtually conceded this point, suggesting that the applications were so obviously fake that it must have been the case that the banks would have approved a loan to "Captain Kangaroo." Eisner's point, evidently, was that as a result the misinformation was not material. But there was also substantial testimony that the banks did investigate at least some of the loans, and that the identity

and financial condition of the applicant were highly significant to the banks' decision.

Furthermore, there was extensive circumstantial evidence that Eisner himself filled out the loan forms, and in any event, that the loans were for Eisner himself. Both the home and business phone numbers listed on the applications rang in his own home. A bank investigator, who called that "business" phone number to verify the employment and salary of one of the bogus applicants, reported that he had successfully verified, suggesting rather strongly that Eisner had taken the call, had had knowledge of what the application said, and lied to the investigator accordingly. Eisner also behaved as though he was the holder of the loans, making monthly payments from accounts he controlled. Eisner possessed a second driver's license in the name "Morbachi Eisner," a typo for "Mordechai," and there was testimony that he sometimes went by that name. While it is conceivable that one could weave all of this information together into a story in which Eisner was merely intimately involved in the fraud, without actually filling out the documents himself, that is certainly not the only, nor even close to the most plausible, explanation. A rational finder of fact could have concluded beyond a reasonable doubt that Eisner was the principal. Therefore, there was sufficient evidence to convict him on that basis. *See LaSpina,* 299 F.3d at 180. As a result, whether or not there was sufficient evidence to justify an instruction on aiding and abetting is irrelevant.

■ Eisner's claim that the aiding and abetting instruction constructively amended or prejudicially varied the indictment is

---

1. 18 U.S.C. § 1344 makes it illegal to "knowingly execute ... a scheme or artifice –(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises."

frivolous. "[B]ecause an aiding and abetting charge is arguably implicit in every indictment .... it is well established that a trial judge may properly give an aiding and abetting instruction even if the indictment does not expressly charge a violation of 18 U.S.C. § 2." *United States v. Mucciante*, 21 F.3d 1228, 1234 (2d Cir.1994) (internal citations omitted). Even if that were not the case, the indictment here actually cited 18 U.S.C. § 2. Eisner therefore "cannot seriously contend that his indictment was amended by the addition of an aiding and abetting instruction." *Mucciante*, 21 F.3d at 1234 (citing *United States v. Robinson*, 956 F.2d 1388, 1394–95 (7th Cir.1992)).

 Eisner also appeals the District Court's decision to admit evidence that, subsequent to the conduct charged here, he used incorrect social security numbers on loan application forms he submitted to the City of New York, as well its decision to admit evidence of Eisner's testimony at a deposition in an unrelated civil trial.

The District Court acknowledged that the loan applications arguably fell within the prohibition of Fed.R.Evid. 404(b), but found that they were admissible because they were relevant to prove Eisner's "identity," rather than his propensity to commit crime. We review the District Court's evidentiary determinations for abuse of discretion. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 264 (2d Cir. 2002). The city loan application evidence is not as similar to the charged conduct as some other evidence we have in the past admitted as proof of identity. *See, e.g., United States v. Tubol*, 191 F.3d 88, 95 (2d Cir.1999) (collecting cases); *United States v. Gubelman*, 571 F.2d 1252, 1255 (2d Cir. 1978). Nonetheless, there were some important resemblances between the two schemes.

Even if the District Court was wrong in admitting the uncharged loan applications,

any error it committed was harmless. First, there is a strong likelihood that the challenged evidence would have been admissible against Eisner as proof of his intent. *Cf. United States v. Downing*, 297 F.3d 52, 59 (2d Cir.2002) (noting that defendant's contention that he "neither knew about nor intended to facilitate" fraud "made evidence of his previous participation in a substantially similar scheme highly probative"); *United States v. Jean–Baptiste*, 166 F.3d 102, 107 (2d Cir.1999) (observing that misrepresentation of social security number in passport application would be relevant to whether misrepresentation of birthplace on passport application 17 years later was an accident). Second, in view of the extensive other evidence of Eisner's guilt we have just set forth, we "can conclude with fair assurance that the [improperly admitted] evidence did not substantially influence the jury." *United States v. Garcia*, 291 F.3d 127, 143 (2d Cir.2002). We therefore affirm the District Court's determination. *See United States v. Taubman*, 297 F.3d 161, 165 (2d Cir.2002).

 Nor do we detect any error in the District Court's decision to admit Eisner's deposition transcript. As the Government points out, the segments of the transcript that were admitted bore directly on several important aspects of the case, including where Eisner lived, his relationship with an entity, United Kaliver Yeshiva, which wrote checks to pay some of the loan payments on the fraudulent loans, and his exceedingly evasive answers when questioned about an individual named Mordechai Eisner. Eisner now complains that his comportment in the deposition was such that it amounted to evidence that he had a propensity to lie (and, in fact, the Government argued as much in its closing statement). Even if this was prejudice, however, it was not unfair; the fact that Eisner was inclined to conceal information

about Mordechai Eisner and UKY, among other things, was probative of his knowledge of the contents of the fraudulent loans, and could have permitted the jury to infer that he, in effect, "protests too much," even within the context of a contentious civil deposition.[2]

■ Finally, the District Court did not abuse its discretion in determining that Eisner was subject to a four-level enhancement as an "organizer or leader" under U.S.S.G. § 3B1.1(a). The Guideline covers those who organize or lead a criminal activity that involved five or more knowing participants, including the defendant, or that was "otherwise extensive." *United States v. Paccione*, 202 F.3d 622, 624 (2d Cir.2000). At a *Fatico* hearing, the District Court heard testimony that Eisner recruited another individual, Neuman, to solicit "donations" to Eisner's charity, United Kaliver Yeshiva. Neuman, in turn, located "donors," whose money was kicked back, minus a 10% commission for Eisner. The donors were able to claim the full donation as a tax write-off. Five individuals in all made "donations," although in two cases it appears that Neuman represented the UKY as a real charity, and kept the kickback for himself. Neuman's testimony was supported by tapes of several intercepted conversations between Neuman and Eisner. Crediting Neuman, as we virtually must in this posture, there is no question the District Court had sufficient basis to apply the four-level enhancement.

Therefore, for the reasons stated above, the judgment of the District Court is hereby Affirmed.

---

2. Eisner does not now argue, as he did below, that admission of his deposition testimony treads on his Fifth Amendment right against self-incrimination.